IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHAWN SMITH, | | |
| Plaintiff, | | No. 21-cv-03793 |
| v. | | Judge John F. Kness |
| CHICAGO POLICE DETECTIVE ANTHONY REYES, CHICAGO POLICE SERGEANT JASON BROWN, CHICAGO POLICE SERGEANT BRIAN RONEY, and CITY OF CHICAGO, | | |
| Defendants. | | |

ORDER

Defendants' motions to dismiss (Dkt. 31, 32) are granted, and Plaintiff's complaint is dismissed. See accompanying Statement for details. Plaintiff is given leave to submit an amended complaint if he believes he can cure the pleading deficiencies identified in this order. Any amended complaint must be submitted on or before October 10, 2025. The Court regrets the delay in addressing this motion.

STATEMENT

I. Background

Plaintiff Shawn Smith brings in his Amended Complaint three causes of action for the denial of his due process rights based on alleged false statements and fabricated evidence made and presented by Defendants Anthony Reyes (Count I); Jason Brown (Count II); and Brian Roney (Count III) (collectively the "Officer Defendants"); as well as a *Monell* claim (Count IV) and state law indemnification claim (Count V) against Defendant City of Chicago. (Dkt. 30.) Plaintiff's claims arise from his July 22, 2010 arrest and prosecution for a series of armed robberies of food delivery workers. (*Id.* ¶¶ 9–57.) The armed robberies were initiated when the assailant ordered from a food delivery service using a certain phone number and then robbed the delivery driver who arrived with the order. (*Id.* ¶¶ 20, 103–07.) Plaintiff was arrested on July 22, 2010, after Defendant Roney used a technological device

described in the criminal trial as a pen register (but that, as discussed below, may have been a more advanced device known as a "stingray") to locate the cell phone with the same number used in the robberies, which Plaintiff owned and was using at the time of the arrest. (*Id.* ¶¶ 113, 122, 139–43, 223.) Before trial, Plaintiff (then a criminal defendant) filed a motion to quash arrest and suppress evidence; that motion was denied. (*Id.* ¶ 11.) Two victims in the string of robberies identified Plaintiff in lineups and at Plaintiff's criminal trial. (*Id.* ¶¶ 25, 34, 52.)

Plaintiff's subsequent conviction of armed robbery and aggravated battery with a firearm was overturned on direct appeal. According to the Illinois Appellate Court, Plaintiff's trial counsel was ineffective by failing to object to the testimony of police officers relating to the device used to locate the phone without being qualified as experts. (*Id.* ¶¶ 10–12, 173–81.) On remand, Plaintiff obtained new counsel and filed an amended motion to quash his arrest and suppress the evidence, but before the motion was ruled on, the State dismissed the case. (*Id.* ¶ 182.)

Plaintiff then filed the present civil suit. (Dkt. 1, 30.) According to Plaintiff, Defendant Reyes signed a false affidavit submitted in support of an application to use of a "pen register" and "trap and trace device" on the subject cell phone number, when Reyes instead intended to, and did, use a more sophisticated device known as a "stingray" or a "cell-site simulator." (Dkt. 30 ¶¶ 95–98, 174, 183–94.) A pen register "records the telephone numbers of outgoing calls made from the monitored phone," while a trap and trace device "records the telephone numbers of those calling the phone." *United States v. Terry*, 572 F.3d 430, 431 (7th Cir. 2009). A stingray, however, impersonates the cellular towers used by wireless companies and forces all cell phones within its range to transmit information to the stingray. (*Id.* ¶¶ 143, 183.) A stingray can provide the police additional capabilities, including precise information about the location of a cell phone and the content of phone calls and text messages. (*Id.* ¶¶ 184–91.) Reyes testified at trial that he sought and received a court order allowing the Chicago Police Department to use a pen register. (*Id.* ¶¶ 108–113.) Brown testified at trial about the capabilities of a "pen register" and stated that it could be used to determine the exact location of a cell phone. (*Id.* ¶¶ 116–28.)

Roney was a technician with Chicago Police who monitored the "pen register" for the assailant's number. (*Id.* ¶¶ 140–43.) Roney drove an unmarked SUV containing a laptop computer that allowed him to access the "pen register" (which Plaintiff asserts was in fact a stingray). (*See id.* ¶¶ 144–46.) Roney drove to the area where, according to information provided by the laptop, the cell phone was located; Roney identified the individual holding the cell phone. (*Id.* ¶¶ 147–52.) Roney requested assistance, Brown responded, and the two approached and arrested Plaintiff. (*Id.* ¶¶ 122, 153–56.) Roney was able to locate Plaintiff based on the signal strength of the phone. (*See id.* ¶¶ 158–60.)

2

Plaintiff contends that the Officer Defendants purported to use a pen register to locate Plaintiff but in fact used a stingray. Plaintiff alleges (Count I) that Reyes deprived Plaintiff of due process by executing a false affidavit, giving false information to other police officers, making false statements to prosecutors, and by testifying falsely at pretrial hearings and at trial that the stingray was authorized under an order allowing the use of a pen register. (*Id.* ¶ 217.) Plaintiff further alleges (Counts II, III) that Brown and Roney colluded in the false affidavit and otherwise committed the same deprivation of due process. (*Id.* ¶¶ 220, 223.) As to the City of Chicago, Plaintiff brings a *Monell* claim (Count IV) alleging that the City's use of a stingray came about under an unconstitutional pattern and practice. (*Id.* ¶¶ 225–28.) Finally, Plaintiff brings an indemnification claim (Count V) against the City for the torts committed by the Officer Defendants. (*Id.* ¶¶ 229–31.)

Defendants move to dismiss the Amended Complaint. (Dkt. 31–32.) The Officer Defendants contend that Plaintiff cannot state a cause of action because he has failed to allege facts sufficient to establish due process or Fourth Amendment violations. (Dkt. 31 at 3–9.) In addition, the Officer Defendants argue that, even if Plaintiff did plead sufficient facts, the Officers Defendants are entitled to either qualified or absolute immunity. (*Id.* at 9–13.) Defendant City of Chicago contends the suit should be dismissed because Plaintiff did not plausibly plead any underlying constitutional violation; fails to allege facts that would establish that a stingray was widely used by the Chicago Police Department such that it would constitute a *de facto* policy; fails to allege facts that support an inference that the City had a systematic practice to use the stingray in an unconstitutional manner; fails to allege sufficient facts that City policymakers were aware of a widespread unconstitutional use of the stingray device by its police force and consciously ratified its use through deliberate indifference; and fails to demonstrate how any policy by the City with respect to the alleged stingray device caused his conviction at his criminal trial. (Dkt. 32 at 5–14.)

## II. Legal Standard

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (cleaned up). As the Seventh Circuit has emphasized, a plaintiff need not "lay out every element or ingredient" of a claim to survive a Rule 12(b)(6) motion. *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1336 (7th Cir. 2024). Such "details and proof" come later, and all a plaintiff must do is "state a grievance." *Id.* at 1338. In evaluating a motion to dismiss, the Court must accept as true the complaint's

3

factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678–79.

### III. Discussion

#### A. Plaintiff fails to state viable claims against the Officer Defendants

Plaintiff did not respond to the Officer Defendants' motion to dismiss. (Dkt. 31.) Plaintiff sought to file a response instanter, but because Plaintiff did not show good cause for his failure to respond, the Court denied the motion.[1] (Dkt. 44.) A district court, however, may not grant a Rule 12(b)(6) motion to dismiss "solely because there is no response." *Marcure v. Lynn*, 992 F.3d 625, 633 (7th Cir. 2021). A party seeking the dismissal of a case must still "show [an] entitlement to dismissal." *Id.* at 631. Under this standard, the Court must consider the merits of the Officer Defendants' motion to dismiss.

Ordinarily, a claim that police conducted an illegal search without a valid warrant would be brought under the Fourth Amendment. But as the Officer Defendants correctly note, in Illinois, a Fourth Amendment illegal search claim under 42 U.S.C. § 1983 is governed by Illinois' two-year statute of limitations for personal injury actions, which accrues "at the time the search and seizure occurred." *DeLarosa v. Village of Romeoville*, No. 24-1715, 2024 WL 4523808, at *1–2 (7th Cir. Oct. 18, 2024) (nonprecedential disposition). Plaintiff was arrested in 2010 (Dkt. 30 ¶ 9), nearly eleven years before this case was filed, which renders any illegal search claim stemming from this arrest long barred by the statute of limitations. (Dkt. 1.) This fact might explain why Plaintiff's claims against the Officer Defendants largely sound in the Fourth Amendment but are brought as Fourteenth Amendment due process claims.[2] (Dkt. 30 ¶¶ 216–24.)

Plaintiff's attempt to style his objection to the alleged use of the stingray as a "due process" violation runs into significant headwinds. Plaintiff's complaint largely stems from statements made by the Officer Defendants during witness testimony. (*E.g.*, Dkt. 30 ¶ 101 ("Reyes, Smith, and Brown repeated this lie to the prosecutors on Shawn Smith's criminal cases, before and during the pretrial hearing on the motion to quash and suppress and before and during Shawn Smith's trial.") To the extent

---

[1] Plaintiff timely responded to the City of Chicago's motion to dismiss (*see* Dkt. 38), which was due on the same date. (Dkt. 37). Plaintiff provided no justification for why he failed to respond to the Officer Defendants' motion to dismiss. (*See* Dkt. 41.)

[2] For instance, Plaintiff's *Monell* claim alleges that the City of Chicago's use of stingrays deprives citizens of their Fourth Amendment rights, which indicates that the underlying claims against the Officer Defendants are best construed as Fourth Amendment illegal search claims. (Dkt. 30 ¶ 227.)

4

Plaintiff complains that the Officer Defendants allegedly lied in connection with their testimony, the Officer Defendants are "protected by the traditional absolute immunity accorded to witnesses at a judicial proceeding," which covers "the preparation of testimony as well as its actual delivery in court" and is designed to aid the search for truth by limiting the fear of recrimination for testimony. *Canen v. Chapman*, 847 F.3d 407, 415 (7th Cir. 2017); *see also Manning v. Miller*, 355 F.3d 1028, 1031–32 (7th Cir. 2004) (perjury is "solidly considered to be immune from civil liability," and "when police officers testify as witnesses, they have the same protections."). That leaves Plaintiff's allegations that the Officer Defendants executed (or colluded to execute) a false affidavit and made false statements to other police officers in connection with Plaintiff's arrest. (Dkt. 30 ¶¶ 217, 220, 223.) In essence, Plaintiff's complaint is that (1) the Officer Defendants represented in an affidavit to the judiciary, in reports, or to other officers that they were to use a pen register when they in fact intended to use a stingray; and (2) this constituted fabrication of evidence. (*See id.* ¶¶ 95–101.)

Even if all that were true, Plaintiff would still fail to state a viable claim. To establish a due process claim for evidence fabrication, Plaintiff must be "convicted and imprisoned based on knowingly falsified evidence, violating his right to a fair trial and thus depriving him of liberty without due process." *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020). The fabricated evidence must have been used against the Plaintiff at trial and must have also been material; that is, there must be "a reasonable likelihood the evidence affected the judgment of the jury." *Id.* Plaintiff, however, does not actually allege that fabricated evidence was shown to the jury—or that there was any actual fabrication of evidence at all.[3] Plaintiff's complaint, at base, is that the Officer Defendants sought a warrant for and stated, to each other and to the jury, that they were using a pen register but instead used a stingray. That is not evidence fabrication. Nowhere does Plaintiff allege that the Officers fabricated—*i.e.*, created—"invariably false" evidence or coerced anyone to do so. *Anderson v. City of Rockford*, 932 F.3d 494, 510 (7th Cir. 2019). Plaintiff mostly objects to the Officer Defendants' testimonial characterization of the device used to locate Plaintiff. (*See* Dkt. 30 ¶¶ 95–172.) Even if that testimony was not subject to

---

[3] Assuming Plaintiff complains about pretrial seizure or detention (as opposed to post-conviction incarceration), that is also improperly pleaded. Constitutional claims based on evidence fabrication that concern false arrest or pretrial detention "sound[] in the Fourth Amendment right to be free from seizure without probable cause," not the Fourteenth Amendment. *Patrick*, 974 F.3d at 834; *see also Lewis v. City of Chicago*, 914 F.3d 472, 476–78 (7th Cir. 2019). Following *Lewis*, the Seventh Circuit has reiterated that Section 1983 actions challenging the constitutionality of pretrial detention arise under the Fourth Amendment, not the Fourteenth. *See, e.g.*, *Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019). To the extent that Plaintiff's claims are for unlawful pretrial detention, those claims are improperly brought under the Fourteenth Amendment, and are, accordingly, dismissed. Moreover, for the reasons described below, even if they were repleaded as Fourth Amendment claims, they would likely still be barred by, among other things, qualified immunity.

absolute immunity, however, the Officer Defendants were subject to cross-examination on the veracity of their statements about the pen register/stingray nomenclature. That is all the process that Plaintiff was due.[4] Plaintiff also briefly mentions the affidavit the Officer Defendants sought so they could use the pen register. (Dkt. 30 ¶ 95.) Plaintiff, however, does not allege that anything in the affidavit was false. Plaintiff objects instead that the stingray was used at all, either under the warrant or in ignorance of it. (*E.g.*, *id.* ¶ 217.) That is a Fourth Amendment illegal search claim, not a due process claim, and for the reasons stated above, it is not timely.

Plaintiff's claims against the Officer Defendants also fail to overcome the distinct hurdle of qualified immunity. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks omitted). Qualified immunity shields government officials performing discretionary functions from civil damages liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Once the defense of qualified immunity "is raised, 'it becomes the plaintiff's burden to defeat it.'" *Estate of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012) (quoting *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008)).

Qualified immunity includes two inquiries. First is whether the officer violated a constitutional right. *See Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018). Second is whether the "right at issue was 'clearly established' at the time of [the] alleged misconduct." *Pearson*, 555 U.S. at 232. Courts have the discretion to answer one question or both, and to decide the order of those inquiries. *See id.* at 242 ("[T]he judges of the district courts . . . are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case.").

The Officer Defendants argue that the use of a stingray to obtain a criminal suspect's location in a public place via real-time cell phone data is not a search implicating the Fourth Amendment, and so no constitutional violation was committed. (Dkt. 31 at 8–9.) For support, the Officer Defendants cite the Seventh

---

[4] The related Appellate Court of Illinois decision is itself sufficient to show the due process Plaintiff was afforded. *See People v. Smith*, 2017 IL App (1st) 141814-UB. For Plaintiff's counsel's failure to properly object to the introduction of the Officer Defendant's lay testimony on the surveillance technology used to locate Plaintiff (which instead should have been an expert opinion, given the technical intricacies of the stingray device), Plaintiff was given new counsel, an opportunity to relitigate the issue, and a new trial judge. (*See id.* ¶¶ 89–104.)

Circuit's decision in *United States v. Hammond*, which held that the police did not conduct a Fourth Amendment search by requesting a criminal suspect's real-time cell site location information ("CLSI") from AT&T to geolocate the suspect, "where the officers only collected real-time CSLI for a matter of hours while the suspect travelled on public roadways, and law enforcement limited its use of the CSLI to the purpose of finding the armed suspect who they had reason to believe was likely to engage in another armed robbery." 996 F.3d 374, 381, 391–92 (7th Cir. 2021). Although *Hammond* concerned real-time geolocation data from the cell phone provider (not through a stingray), it is a compelling case for the proposition that no search was conducted here.

This unsettled Fourth Amendment issue, which the Seventh Circuit apparently has not specifically addressed, need not be decided for purposes of resolving the present motion. *See United States v. Patrick*, 842 F.3d 540, 544 (7th Cir. 2016) ("The United States has conceded for the purpose of this litigation that use of a cell-site simulator is a search, so we need not tackle these questions.") Other courts have decided this issue and determined that use of a cell site simulator is a search. *See United States v. Ellis*, 270 F.Supp.3d 1134, 1146 (N.D. Cal. 2017) (reasonable expectation of privacy in location information revealed by cell site simulators requires a warrant for their use); *United States v. Lambis*, 197 F.Supp.3d 606, 610 (S.D.N.Y 2016) (use of cell site simulator requires a warrant when use of a cell site simulator reveals the presence of a target phone in the suspect's apartment); *Jones v. United States*, 168 A.3d 703, 713–715 (D.C. 2017) (legitimate expectation of privacy in real time location information requires warrant before use of cell site simulator). There was no clearly established law in 2010 that would have required the Officer Defendants to obtain a warrant to use a stingray to locate an at-large criminal suspect, which is evident from the Seventh Circuit's 2016 opinion in *Patrick* addressing (and questioning), six years after Plaintiff's arrest, whether using a stingray "is a 'search' at all." 842 F.3d at 543. The Officer Defendants are entitled to qualified immunity, and their motion to dismiss is granted.[5]

### B. Absent an underlying constitutional violation, Plaintiff's *Monell* claim (Count IV) must be dismissed.

Because the sole underlying constitutional claims against the Officer Defendants have failed, Plaintiff's *Monell* claim against the City of Chicago for municipal liability must be dismissed. *See, e.g.*, *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000) ("[I]t is well established in this Circuit that a municipality's liability for a constitutional injury 'requires a finding that the individual officer is liable on the underlying substantive claim.' ") (cleaned up); *Sallenger v. City of Springfield*, 630 F.3d 499, 505 (7th Cir. 2010) ("[T]he officers' conduct did not violate the Fourth Amendment. Accordingly, because there is no underlying constitutional

---

[5] Count V against the City of Chicago, which seeks indemnification for the Officer Defendants' torts, is therefore dismissed. (Dkt. 1 ¶¶ 229–31.)

7

violation, the City cannot be liable under *Monell*."); *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 987, 987 (7th Cir. 2021) ("A *Monell* plaintiff must establish that he suffered a deprivation of a federal right *before* municipal fault, deliberate indifference, and causation come into play. [Plaintiff's *Monell*] claim fails at this first step. He did not suffer a deprivation of a right secured by the federal Constitution or laws.") (emphasis in original). Accordingly, the City of Chicago's motion to dismiss Count IV (Dkt. 32) is granted.

## IV. Conclusion

For the reasons stated above, Defendants' motions to dismiss (Dkt. 31; Dkt. 32) are granted. Because this order constitutes the first time the Court has addressed the sufficiency of the complaint, Plaintiff will be given leave to file an amended complaint (in his discretion) by the due date noted above.

SO ORDERED in No. 21-cv-03793.

Date: September 22, 2025

JOHN F. KNESS
United States District Judge